EXHIBIT A-4

| | |
|---|---|
| District Court, Costilla County, Colorado<br>304 Main Street<br>San Luis, CO 81152 | DATE FILED<br>April 18, 2026 9:41 PM<br>FILING ID: 2F24E6E49A3B9<br>CASE NUMBER: 2026CV30007 |
| **AUGUSTINE ESQUIBEL**,<br>Plaintiff<br><br>v.<br><br>**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COSTILLA, COLORADO,**<br>**JOE SMITH,** in his official capacity as Sheriff of Costilla County,<br>**DANNY SANCHEZ,** in his individual capacity,<br>**CRUZ SOTO,** in his individual capacity,<br>**MONIQUE TRUJILLO,** in her individual capacity,<br>**DYLAN MEJIA**, in his individual capacity,<br>**JAUREGUI ASTORGA**, in their individual capacity,<br>**JOHN/JANE DOES #1-#4,** in their individual capacity,<br>Defendants | ▲Court Use Only▲ |
| *Attorney for Plaintiff Augustine Esquibel*<br>Jason Kosloski, #50214<br>Kosloski Law, PLLC<br>1401 Lawrence Street, Suite 1600<br>Denver, CO 80202<br>(720) 605-6487<br>jkosloski@kosloskilaw.com | Case No.:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Augustine Esquibel, by and through his counsel, KOSLOSKI LAW, PLLC, alleges for his Complaint and Jury Demand as follows:

## INTRODUCTION

1) Humans need oxygen to live. When a person suffers from certain illnesses, diseases, or disabilities, they cannot acquire sufficient oxygen through normal breathing to survive. In those cases, supplemental oxygen is not a luxury it is a critical life-sustaining medicine.

2) When a law enforcement officer or agency takes someone into their custody, they have the basic constitutional (and human) obligation to provide for that person's medical needs. When those medical needs include supplemental oxygen, that law enforcement officer or agency has the constitutional obligation to provide that necessary supplemental oxygen.

3) This is a case about the Costilla County Sheriff's Office dereliction of that duty and deprivation of Plaintiff Esquibel's basic right to receive the life-sustaining oxygen he required while he

spent nearly 24 hours in the custody of the Costilla County Sheriff's Office between April 17 and 18, 2024.

4) This is also a case about the decision of the Costilla County Sheriff's Office to hold Plaintiff Esquibel in custody after he had already posted bond due to convenience because of their deficient staffing.

## PARTIES AND JURISDICTION

5) Augustine Esquibel is the Plaintiff. At all relevant times, Plaintiff Esquibel was a resident of Colorado and a citizen of the United States.

6) Defendant Board of County Commissioners of the County of Costilla, Colorado is the governing body of Costilla County, Colorado, a political subdivision of the State of Colorado organized and existing under the laws of the State of Colorado. The Board is the proper party defendant for actions against Costilla County pursuant to C.R.S. § 30-11-105. At all relevant times, Costilla County, acting through its agencies including the Costilla County Sheriff's Office, was responsible for the custody, care, supervision, and medical needs of individuals taken into the custody of the Costilla County Sheriff's Office, and employed and supervised the individuals responsible for the same. At all relevant times, Costilla County and the Costilla County Sheriff's Office received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

7) Defendant Joe Smith is the current (interim) Sheriff of Costilla County. Defendant Smith is the final policymaker for the Costilla County Sheriff's Office and responsible for all training and policy within the Costilla County Sheriff's Office. In this capacity, Defendant Smith has supervisory authority over all Costilla County Sheriff's Office personnel and is responsible for establishing and enforcing policies and procedures governing the Costilla County Sheriff's Office operations and the protection of the constitutional rights of the individuals in the custody of the Costilla County Sheriff's Office. Defendant Smith is sued in his official capacity as the Costilla County Sheriff. Defendant Board of County Commissioners and Defendant Smith are collectively referred to as the "institutional defendants."

8) Defendant Danny Sanchez was, at all relevant times, the elected Sheriff of Costilla County, Colorado. Defendant Sanchez was, at all times relevant, the final policymaker for the Costilla County Sheriff's Office and responsible for all training and policy within the Costilla County Sheriff's Office. In this capacity, Defendant Sanchez had supervisory authority over all Costilla County Sheriff's Office personnel and was responsible for establishing and enforcing policies and procedures governing the Costilla County Sheriff's Office and the protection of the constitutional rights of the individuals in the custody of the Costilla County Sheriff's Office. At all relevant times, Defendant Sanchez was a peace officer and was acting under the color of state law. Defendant Sanchez is sued in his individual capacity.

9) Defendant Cruz Soto was, at all relevant times, the Undersheriff for the Costilla County Sheriff's Office. Upon information and belief, at all relevant times, Defendant Soto had supervisory authority over all other Costilla County Sheriff's Office personnel. At all relevant times, Defendant Soto was a peace officer and was acting under the color of state law. Defendant Soto is sued in his individual capacity.

10) Defendant Monique Trujillo was, at all relevant times, the Jail Administrator for the Costilla County Sheriff's Office. Upon information and belief, Defendant Trujillo was responsible, at least in part, for the policy-making of the Costilla County Sheriff's Office. Defendant Trujillo is sued in her individual capacity.

11) Upon information and belief, at all times relevant to this case, Defendant Dylan Mejia was a deputy with the Costilla County Sheriff's Office. Upon information and belief, Defendant Mejia was a peace officer and was acting under color of state law at all times relevant to this case. Defendant Mejia is sued in his individual capacity.

12) Upon information and belief, at all times relevant to this case, Defendant Jauregui Astorga was a deputy with the Costilla County Sheriff's Office. Upon information and belief, Defendant Astorga was a peace officer and was acting under color of state law at all times relevant to this case. Defendant Astorga is sued in their individual capacity.

13) Defendants John/Jane Does #1-#4 are or were Costilla County Sheriff's Office deputies who were involved in the events described more fully in this Complaint but whose identities are unknown to Plaintiff because the Costilla County Sheriff's Office has provided insufficient responsive records to Plaintiff's open records requests (or simply did not retain records). Upon information and belief, Defendants John/Jane Does #1-#4 were peace officers and were acting under the color of state law. Defendants John/Jane Does #1-#4 are sued in their individual capacities.

14) This Court has jurisdiction over the subject matter of this Complaint and personal jurisdiction over all Defendants.

15) The acts underlying this Complaint occurred within the 12th Judicial District of Colorado and began and ended within Costilla County. Therefore, venue is proper with this Court.

## Factual Allegations

16) On April 17 and 18th, 2024, Plaintiff Esquibel was fifty-eight years old. Plaintiff Esquibel suffered from Chronic Obstructive Pulmonary Disease (COPD) and Chronic Respiratory Failure, amongst other ailments.

17) In 2022, Plaintiff Esquibel's pulmonary function testing revealed that Plaintiff Esquibel had a FVC of 4.54 L (94% predicted), FEV1 of 1.82 L (48% predicted) and FEV1/FVC of 40%. Plaintiff Esquibel's lungs worked about half as well as they should have. Plaintiff Esquibel was prescribed supplemental oxygen of at least 2 liters per minute at baseline. In 2022, Plaintiff Esquibel's doctor opined that Plaintiff Esquibel was 100% disabled due to his medical diagnoses.

18) Plaintiff Esquibel's medical condition worsened over the years.

19) Plaintiff Esquibel's declined medical condition was well known in the Costilla County community, including upon information and belief, to the Defendants.

20) In the early months of 2024, Plaintiff Esquibel was hospitalized with a lung infection.

21) While Plaintiff Esquibel was hospitalized, Plaintiff Esquibel unfortunately missed a court date in a Costilla County civil quiet title case.

22) Because Plaintiff Esquibel missed court, a bench warrant was issued for his arrest.

23) Plaintiff Esquibel was subsequently released from the hospital in a fragile medical condition.

24) On April 17, 2024, Plaintiff Esquibel was arrested on the bench warrant mentioned above by the Colorado State Patrol at approximately 10:37AM.

25) Following this arrest, the Colorado State Patrol took Plaintiff Esquibel to the San Luis Valley Health-RMC hospital, in Alamosa, Colorado, to be evaluated.

26) Upon information and belief, Plaintiff Esquibel was taken to the hospital for evaluation at the direction of the Costilla County Sheriff's Office and Defendant Sanchez.

27) While Plaintiff Esquibel was at the hospital, Defendant Sanchez was informed that Plaintiff Esquibel would not be cleared for incarceration without a source of continuous medical oxygen.

28) Plaintiff Esquibel was ultimately "cleared" for jail by the hospital. Plaintiff Esquibel provided the following orders/condition on Plaintiff Esquibel's medical clearance:

> [Plaintiff Esquibel] requires continuous oxygen between 4 to 6 L/min via nasal cannula. If [Plaintiff Esquibel] is not able to receive this continuous oxygen, he is not medically cleared to stay at that facility . . . . [Plaintiff Esquibel] is not medically cleared to stay at a facility that is unable to provide continuous oxygen. [Plaintiff Esquibel] is medically cleared for incarceration if he is able to receive continuous oxygen between 4 to 6 L/min via nasal cannula and if he is able to take all of his chronic prescriptions as prescribed and pick up the new ones from Walgreens pharmacy.

29) Upon information and belief, Plaintiff Esquibel and members of the Colorado State Patrol had conversations with Defendant Sanchez and other members of the Costilla County Sheriff's Office prior to, and during, Plaintiff Esquibel's hospitalization. Upon information and belief, Plaintiff Esquibel made Defendant Sanchez aware of his previous hospitalization, declined medical condition, current hospitalization, and significant medical needs.

30) Upon information and belief, Defendant Sanchez, and other staff of the Costilla County Sheriff's Office, including the named defendants, were aware of Plaintiff Esquibel's fragile medical condition and need for continuous oxygen.

31) Upon information and belief, Defendant Sanchez told Plaintiff Esquibel that he needed to "ration" his oxygen because the Costilla County Sheriff's Office had no oxygen to provide Plaintiff Esquibel.

32) Plaintiff Esquibel was ultimately released from the hospital and transported by the Colorado State Patrol to the Costilla County Sheriff's Office.

33) Upon information and belief, Plaintiff Esquibel was released from the hospital with a two-hour supply of oxygen.

34) Upon information and belief, the Costilla County Sheriff's Office had no direct access to medical oxygen.

35) Upon information and belief, all individual defendants were aware that the Costilla County Sheriff's Office had no direct access to medical oxygen.

36) When Plaintiff Esquibel arrived at the Costilla County Sheriff's Office, he was placed in a holding area.

37) Plaintiff Esquibel was handcuffed to a chair and left alone in the holding area while Costilla County Sheriff's Office personnel, including, upon information and belief, Defendants Sanchez, Soto, Trujillo, Mejia, Astorga, and Does #1-#4, met and discussed a plan for Plaintiff Esquibel.

38) Upon information and belief, while Plaintiff Esquibel was left alone in the holding area, nobody was watching or paying attention to Plaintiff Esquibel.

39) Upon information and belief, no member of the Costilla County Sheriff's Office monitored Plaintiff Esquibel's blood oxygen level or the amount of oxygen remaining in his tank.

40) Upon information and belief, the Costilla County Sheriff's Office had (and has) no policy or procedure to care for a prisoner in their care who required medical oxygen.

41) Plaintiff Esquibel ran out of oxygen while handcuffed in the holding area of the Costilla County Sheriff's Office.

42) Plaintiff Esquibel collapsed after running out of oxygen and suffered a medical emergency.

43) Upon information and belief, Defendants Sanchez, Soto, Trujillo, Mejia, Astorga, and Does #1-#4 discovered that Plaintiff Esquibel had collapsed and was in medical distress after having run out of oxygen.

44) Plaintiff Esquibel was taken by ambulance to a different hospital, the Conejos County Hospital.

45) Upon information and belief, Plaintiff Esquibel was once again cleared for incarceration if he could receive medically necessary oxygen.

46) Upon information and belief, Defendants, including Defendants Soto, Trujillo, Mejia, Astorga, and Does #1-#4 knew that Plaintiff Esquibel was only cleared for incarceration on the condition that he received medical oxygen.

47) Because the Costilla County Sheriff's Office did not operate a jail facility at the time, Plaintiff Esquibel was transported to the Archuleta County Sheriff's Office.

48) When Plaintiff was released from the Conejos County Hospital, he was released with some oxygen. However, this oxygen was not enough to provide him with medically necessary oxygen during the entire trip to the Archuleta County Sheriff's Office.

49) Upon information and belief, Defendants Sanchez, Soto, Trujillo, Mejia, Astorga, and Does #1-#4 knew that Plaintiff Esquibel was not released with enough oxygen to make the trip to the Archuleta County Sheriff's Office.

50) Plaintiff Esquibel was transported in a Costilla County Sheriff's Office vehicle from the Conejos County Hospital to the Archuleta County Sheriff's Office.

51) Plaintiff is unaware of precisely who transported him. However, upon information and belief, he was transported by either Defendants Soto, Mejia, Astorga, or Doe #1 at the direction of either Defendant Sanchez or Defendant Soto. In any event, upon information and belief, all named Defendants knew that Plaintiff Esquibel was medically fragile, required continuous oxygen, and that there was not enough oxygen for Plaintiff Esquibel to reach the Archuleta County Sheriff's Office.

52) During the trip, Plaintiff Esquibel ran out of oxygen twice.

53) After the first time, Plaintiff Esquibel was taken to the hospital in Monte Vista, Colorado, to receive additional oxygen.

54) Between the hospital in Monte Vista, Colorado, and the Archuleta County Sheriff's Office, Plaintiff Esquibel again ran out of oxygen.

55) By the time that Plaintiff Esquibel reached the Archuleta County Sheriff's Office, Plaintiff Esquibel's lips were turning blue and he could barely stand.

56) Shortly after arriving at the Archuleta County Sheriff's Office, Plaintiff Esquibel collapsed and was taken to the hospital in Pagosa Springs.

57) Plaintiff Esquibel remained at the hospital in Pagosa Springs until he posted bond.

58) After Plaintiff Esquibel posted bond, the Costilla County Sheriff's Office prolonged his release from custody. Plaintiff Esquibel was told that he could not be processed out of custody because the Costilla County Sheriff's Office lacked a transport deputy to return Plaintiff Esquibel to his home.

59) Plaintiff alleges upon information and belief that one or both of Defendant Sanchez or Defendant Soto (and likely other named Defendants) were aware that Plaintiff had posted bond and either directed that he not be released from custody or was aware that Plaintiff had not been released from custody and failed to intervene against the continued seizure.

60) Ultimately, Plaintiff Esquibel was released from the custody of the Costilla County Sheriff's Office on April 18, 2024. As part of the release, Plaintiff Esquibel was transported to his home by a deputy with the Costilla County Sheriff's Office. Upon information and belief, that transporting deputy was one of the individual defendants in this lawsuit.

61) During this transport, the Costilla County Sheriff's Office deputy who transported Plaintiff Esquibel knew that once again, Plaintiff Esquibel did not have enough oxygen in his possession to last the trip home.

62) Plaintiff is unaware of the identity of this deputy. However, upon information and belief, this deputy was one of the individual Defendants.

63) Alternatively, upon information and belief, the individual Defendants were aware that this deputy was transporting Plaintiff without enough medical oxygen and either directed the transport or failed to intervene against the transport.

64) During this transport, the Costilla County Sheriff's Office deputy who transported Plaintiff Esquibel manually reduced Plaintiff Esquibel's oxygen flow in order to "conserve it."

65) Plaintiff alleges upon information and belief that one or both of Defendant Sanchez or Defendant Soto either directed this deputy to reduce Plaintiff Esquibel's oxygen flow or was aware and failed to intervene against the reduction.

66) Because of this, during the final ride home before being released from custody, Plaintiff Esquibel once again did not receive his prescribed medical oxygen.

67) In sum, Plaintiff Esquibel started the day on April 17, 2024, medically fragile but stable. Over the next 24 hours in Costilla County Sheriff's Office custody, Plaintiff Esquibel was hospitalized at least three times and ran out of medical oxygen at least four times due to the actions of the Costilla County Sheriff's Office and the individual Defendants' failing to provide Plaintiff his medically necessary oxygen.

68) This deprivation of medically necessary oxygen and indifference to Plaintiff Esquibel's medical needs continued continuously from the time that Plaintiff entered the custody of the Costilla County Sheriff's Office on April 17, 2024, to his eventual release on April 18, 2024.

69) Since then, Plaintiff Esquibel's health has continued to decline.

70) Plaintiff Esquibel discussed with his doctors the 24 hours he spent in the custody of the Costilla County Sheriff's Office without proper oxygen. Plaintiff Esquibel was told by his doctors that this period of oxygen deprivation likely significantly contributed to the decline in Plaintiff Esquibel's health.

71) The Costilla County Sheriff's Office failed to establish clear policies and procedures governing the provision of medically necessary oxygen to individuals within Costilla County Sheriff's Office custody.

72) The Costilla County Sheriff's Office failed to provide adequate training to its employees and agents regarding the provision of medically necessary oxygen to individuals within Costilla County Sheriff's Office custody.

73) The Costilla County Sheriff's Office failed to adequately supervise Costilla County Sheriff's Office employees and agents to ensure that they provided medically necessary oxygen to individuals within Costilla County Sheriff's Office custody.

74) The Costilla County Sheriff's Office created a custom or policy of deliberate indifference to the constitutional rights of individuals within Costilla County Sheriff's Office custody.

75) Plaintiff alleges upon information and belief that all named individual defendants personally participated in the actions alleged in this complaint. At minimum, upon information and belief, Plaintiff alleges that:

a) Defendant Sanchez and Soto were directly aware of, and directed, all the actions of the other defendants and other members of the Costilla County Sheriff's Office. Defendant Sanchez was aware of Plaintiff's medical needs, aware of the lack of capacity for the Costilla County Sheriff's Office to provide for Plaintiff's medical needs, and aware of each of the actions described in this complaint. Additionally, Defendant Sanchez personally directed Plaintiff to "conserve" or "ration" his oxygen against medical orders and directed the other individual defendants or other Costilla County Sheriff's Office personnel to deprive Plaintiff of his medical oxygen and to keep Plaintiff in custody after bonding out. Defendant Soto, as Undersheriff, was similarly aware of Plaintiff's medical needs and the Costilla County Sheriff's Office's inability to provide oxygen, participated in the planning described herein, and either directly participated in, directed, or failed to intervene against the deprivations of Plaintiff's medical oxygen and continued detention. Plaintiff expects to learn additional information about Defendant Sanchez's and Soto's personal participation in the acts alleged herein throughout the course of discovery.

b) Defendant Trujillo was directly aware of the actions described in this Complaint. Defendant Trujillo, as jail administrator for the Costilla County Sheriff's Office had supervisory authority over the jailing/custody of individuals in Costilla County Sheriff's Office custody. Upon information and belief, Defendant Trujillo was involved in or at least was aware of and failed to intervene against, the decisions to deprive Plaintiff of his medical oxygen and to keep Plaintiff in custody after he had posted bond. Plaintiff expects to learn additional information about Defendant Trujillo's personal participation in the acts alleged herein throughout the course of discovery.

c) Defendants Mejia, Astorga, and Does #1-#4 were directly aware of the actions described in this complaint. Upon information and belief, they directly participated in the detention of Plaintiff, deprivation of Plaintiff's oxygen, and continued detention after Plaintiff posted bond. Plaintiff is unaware of the specific participation of each of these defendants in each portion of the acts alleged herein but alleges that each was involved in the deprivation of Plaintiff's medical oxygen and continued detention or at least was aware of these acts and did not intervene against them. Plaintiff expects to learn additional information about Defendants Mejia, Astorga, and Does #1-#4's personal participation in the acts alleged herein throughout the course of discovery.

## <u>CLAIMS FOR RELIEF</u>

### <u>FIRST CLAIM FOR RELIEF</u>[1]

**C.R.S. § 13-21-131 - Deliberate Indifference to Medical Needs – Violation of Article II, section 3 and 25 of the Colorado Constitution**
**(against Defendants Sanchez, Soto, Mejia, Astorga, and Does #1-#4)**

76) Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here.

77) At all relevant times, Defendants Sanchez, Soto, Mejia, Astorga, and Does #1-#4 were peace officers acting under the color of law.

78) Defendants were aware that Plaintiff had significant and serious medical needs

79) Defendants deprived Plaintiff of reasonable medical treatment, including medically necessary oxygen.

80) This deprivation was unreasonable.

81) Plaintiff had an individual right to proper medical care as an arrestee that is guaranteed by, at minimum, Article II, Sections 3 and 25 of the Colorado Constitution. This includes the right to not be treated with deliberate indifference.

82) Defendants' actions subjected Plaintiff or caused Plaintiff to be subjected to the deprivation of Plaintiff's individual rights to proper medical care as an arrestee and to not be treated with deliberate indifference that are guaranteed by Article II, Sections 3 and 25 of the Colorado Constitution.

83) Defendants' failure to respond appropriately to the medical emergency worsened Plaintiff's condition and caused Plaintiff additional damages.

84) Defendants did not exercise reasonable care for Plaintiff's health and safety.

85) Defendants are not entitled to any statutory immunity or statutory limitation of liability, damages, or attorney's fees pursuant to C.R.S. § 13-21-131(2)(a).

86) Defendants are not entitled to any qualified immunity or common law immunity as a defense to liability pursuant to C.R.S. § 13-21-131(2)(b).

87) As a direct and proximate result of Defendants deliberate indifference, Plaintiff suffered damages, including physical injuries, pain and suffering, emotional distress, and other damages to be determined at trial.

---

[1] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.

## <u>SECOND CLAIM FOR RELIEF</u>[2]

**C.R.S. § 13-21-131 – Substantive Due Process – Article II, section 25 of the Colorado Constitution**

**(against Defendants Sanchez, Soto, Mejia, Astorga, and Does #1-#4)**

88) Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

89) At all times, Defendants were peace officers acting under the color of state law.

90) Article II, section 25 of the Colorado Constitution states that "No person shall be deprived of life, liberty or property without due process of law."

91) Article II, section 25 of the Colorado Constitution provides broader due process protections than the Fourteenth Amendment reflective of Colorado's unique history and circumstances.

92) Government conduct violates Article II, section 25 of the Colorado Constitution when it "shocks the conscience" or violates fundamental notions of human dignity and decency.

93) Plaintiff has an individual right to not be subjected to governmental conduct that "shocks the conscience" or violates fundamental notions of human dignity and decency.

94) Defendants' actions of depriving Plaintiff of medically necessary oxygen and requiring Plaintiff to "ration" or "conserve" his medically necessary oxygen "shocks the conscience" and violates fundamental notions of human dignity and decency.

95) As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

96) Defendants are not entitled to any sort of qualified immunity or "common law immunity" for their actions.

## <u>THIRD CLAIM FOR RELIEF</u>[3]

**C.R.S. § 13-21-131 – Unreasonable Seizure – Article II, section 7 of the Colorado Constitution**

**(against Defendants Sanchez, Soto, Mejia, Astorga, and Does #1-#4)**

97) Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

98) At all times, Defendants were peace officers acting under the color of state law.

99) Plaintiff has an individual right to be free from unreasonable seizures that is guaranteed by Article II, Section 7 of the Colorado Constitution.

100) On April 18, 2024, Plaintiff was in the custody of the Costilla County Sheriff's Office following his arrest on a failure to appear warrant from a civil case.

---

[2] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.

[3] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.

101) On April 18, 2024, Plaintiff posted bond.

102) No other warrant existed authorizing Plaintiff's continued seizure.

103) No Defendant (or any other peace officer) possessed probable cause to believe that Plaintiff had committed any crime.

104) After Plaintiff posted bond, Defendants did not release Plaintiff from their custody.

105) After Plaintiff posted bond, Defendants unreasonably delayed releasing Plaintiff from their custody because of staffing issues with the Costilla County Sheriff's Office.

106) In the alternative, Defendants failed to intervene against the continued seizure of Plaintiff when they were aware that Plaintiff has posted bond.

107) On April 18, 2024, Plaintiff possessed a medical oxygen bottle with a mechanism to control the amount of oxygen that flowed from the bottle into Plaintiff's body.

108) At least one Defendant physically reduced the amount of oxygen flowing from the bottle, constituting a seizure of that bottle.

109) Alternatively, Defendants directed or failed to intervene against, the seizure of Plaintiff's oxygen bottle to reduce the flow of oxygen on April 18, 2024.

110) As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

111) Defendants are not entitled to any sort of qualified immunity or "common law immunity" for their actions.

## FOURTH CLAIM FOR RELIEF[4]

**C.R.S. § 13-21-131 – Unreasonable Search – Article II, section 7 of the Colorado Constitution (against Defendants Sanchez, Soto, Mejia, Astorga, and Does #1-#4)**

112) Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

113) At all times, Defendants were peace officers acting under the color of state law.

114) Plaintiff has an individual right to be free from unreasonable searches that is guaranteed by Article II, Section 7 of the Colorado Constitution.

115) On April 18, 2024, at least one Defendant manipulated an oxygen bottle in Plaintiff's possession to reduce the flow of oxygen from the bottle to Plaintiff.

116) This manipulation was a "search" under the Colorado Constitution.

---

[4] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.

117) No warrant existed authorizing this search.

118) No probable cause or other exception to the warrant requirement existed to justify this search.

119) In the alternative, Defendants failed to intervene against or directed the search of Plaintiff's oxygen bottle to reduce the flow of oxygen on April 18, 2024.

120) As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

121) Defendants are not entitled to any sort of qualified immunity or "common law immunity" for their actions.

## FIFTH CLAIM FOR RELIEF[5]
**42 U.S.C. § 1983 - Deliberate Indifference to Medical Needs – Fourteenth Amendment**
**(against Defendants Sanchez, Soto, Trujillo, Mejia, Astorga, and Does #1-#4)**

122) Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

123) At all times, Defendants were state actors acting under the color of state law.

124) Plaintiff had a clearly established right under the Fourteenth Amendment to the United States Constitution not to be treated with deliberate indifference to his medical needs as an arrestee.

125) Defendants deprived Plaintiff of his rights to not be treated with deliberate indifference.

126) Defendants' conduct in depriving Plaintiff of his medical oxygen was objectively unreasonable and violated clearly established Fourteenth Amendment Rights that a reasonable person in Defendants' position would have known.

127) Additionally and alternatively, Defendants knew that Plaintiff needed medical oxygen and disregarded a substantial risk that Plaintiff would suffer damages by depriving him of oxygen and requiring that Plaintiff "ration" his oxygen.

128) As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF[6]
**42 U.S.C. § 1983 – Substantive Due Process – Fourteenth Amendment**
**(against Defendants Sanchez, Soto, Trujillo, Mejia, Astorga, and Does #1-#4)**

129) Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

130) At all times, Defendants were state actors acting under the color of state law.

---

[5] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.
[6] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.

131) The substantive component of the Due Process Clause protects individuals from arbitrary and oppressive governmental actions and bars certain government actions "regardless of the fairness of the procedures used to implement them."

132) The Fourteenth Amendment prohibits government conduct that "shocks the conscience" or violates fundamental notions of human dignity and decency.

133) Defendants' actions of depriving Plaintiff of medically necessary oxygen and requiring Plaintiff to "ration" or "conserve" his medically necessary oxygen "shocks the conscience" and violates fundamental notions of human dignity and decency.

134) Defendants conduct violated clearly established rights that a reasonable person in Defendants' position would have known.

135) As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF[7]
## 42 U.S.C. § 1983 – Unreasonable Seizure – Fourth Amendment
## (against Defendants Sanchez, Soto, Trujillo, Mejia, Astorga, and Does #1-#4)

136) Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

137) At all times, Defendants were state actors acting under the color of state law.

138) The Fourth Amendment to the United States Constitution prohibits unreasonable seizures.

139) Continued seizure after a person posts bond is an unreasonable seizure.

140) Seizure of a person's medical oxygen tank for the purpose of decreasing the flow of oxygen below the amount medically necessary is an unreasonable seizure.

141) On April 18, 2024, Plaintiff was lawfully in the custody of the Costilla County Sheriff's Office following his arrest on a state court civil failure to appear warrant.

142) On April 18, 2024, Plaintiff posted bond on the state court civil failure to appear warrant.

143) No other warrant existed authorizing Plaintiff's continued seizure.

144) No probable cause existed to believe that Plaintiff had committed any crime.

145) Plaintiff was not released from Defendants' custody following his posting of the bond.

146) After Plaintiff posted bond, Defendants did not release Plaintiff from their custody.

---

[7] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.

147) After Plaintiff posted bond, Defendants unreasonably delayed releasing Plaintiff from their custody because of staffing issues with the Costilla County Sheriff's Office.

148) In the alternative, Defendants failed to intervene against the continued seizure of Plaintiff when they were aware that Plaintiff has posted bond.

149) On April 18, 2024, Plaintiff possessed a medical oxygen bottle with a mechanism to control the amount of oxygen that flowed from the bottle into Plaintiff's body.

150) At least one Defendant physically reduced the amount of oxygen flowing from the bottle, constituting a seizure of that bottle.

151) Alternatively, Defendants directed or failed to intervene against, the seizure of Plaintiff's oxygen bottle to reduce the flow of oxygen on April 18, 2024.

152) As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

153) Each of these actions violated Plaintiff's clearly established constitutional rights that a reasonable person in Defendants' position would have known.

## EIGHTH CLAIM FOR RELIEF[8]
## 42 U.S.C. § 1983 – Unreasonable Search – Fourth Amendment
## (against Defendants Sanchez, Soto, Trujillo, Mejia, Astorga, and Does #1-#4)

154) Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

155) At all times, Defendants were state actors acting under the color of state law.

156) The Fourth Amendment to the United States Constitution prohibits unreasonable searches.

157) Manipulation of personal property is a search.

158) On April 18, 2024, at least one defendant physically manipulated Plaintiff's medical oxygen bottle to reduce the flow of oxygen from the bottle to Plaintiff.

159) This manipulation was a "search" under the Fourth Amendment.

160) No warrant existed to justify this search.

161) No other exception to the warrant requirement existed to justify this search.

162) In the alternative, Defendants directed or failed to intervene against this search.

163) As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

---

[8] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.

164) Each of these actions violated Plaintiff's clearly established constitutional rights that a reasonable person in Defendants' position would have known.

## NINTH CLAIM FOR RELIEF – 42 U.S.C. § 1983 MONELL LIABILITY[9]
**(against Defendants Board of County Commissioners and Smith)**

165) Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

166) At the time of the actions underlying this complaint, Defendant Sanchez had final policymaking authority regarding the Costilla County Sheriff's Office because he was the elected Sheriff and therefore acted as an alter ego for the Costilla County Sheriff's Office. Therefore, the institutional defendants are liable for Defendant Sanchez's actions.

167) Additionally, the federal constitutional violations described herein were caused by the polices, customs, and practices of the institutional defendants, including but not limited to:

a) A policy or custom of not providing sufficient medical treatment to individuals in Costilla County Sheriff's Office custody.

b) A policy or custom of deliberate indifference to the constitutional rights of individuals in Costilla County Sheriff's Office custody.

c) A lack of proper training regarding the proper care for the medical needs of individuals in Costilla County Sheriff's Office custody.

d) A lack of adequate supervision over Costilla County Sheriff's Office employees and agent.

168) These violations, along with other violations that Plaintiff alleges that they will discover during the course of this case, were the moving force behind the constitutional violations described in this complaint.

169) The institutional defendants had actual or constructive notice of the risk that their policies, customs, lack of training, and practices would lead to constitutional violations, yet they acted with deliberate indifference to that risk.

170) As a direct and proximate result of the policies, customs, and practices of the institutional defendants, Plaintiff suffered and continues to suffer damages in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF – 42 U.S.C. § 12132 – VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT[10]
**(against Defendants Board of County Commissioners and Smith)**

---

[9] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.

[10] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.

171) Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

172) Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

173) The Costilla County Sheriff's Office is a "public entity" within the meaning of 42 U.S.C. § 12131(1), and Defendant Board of County Commissioners is the proper defendant for claims arising from its operations.

174) Title II of the ADA applies to the services, programs, and activities of county jails and sheriff's offices, including the custody, transport, housing, and medical care of arrestees and detainees. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998).

175) At all relevant times, Plaintiff was a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2). Plaintiff's Chronic Obstructive Pulmonary Disease and Chronic Respiratory Failure substantially limit one or more major life activities, including breathing, which is expressly enumerated as a major life activity under 42 U.S.C. § 12102(2)(A). Plaintiff's physician had determined Plaintiff to be 100% disabled due to his medical diagnoses, and Plaintiff's medical condition required continuous supplemental oxygen.

176) Defendant, acting through its agents and employees at the Costilla County Sheriff's Office, had actual knowledge of Plaintiff's disability. Hospital personnel informed Defendant Sanchez and other Costilla County Sheriff's Office personnel that Plaintiff required continuous oxygen between 4 to 6 L/min via nasal cannula and was not medically cleared for any facility unable to provide continuous oxygen.

177) Defendant denied Plaintiff meaningful access to the services, programs, and activities of the Costilla County Sheriff's Office — including custodial intake, detention, transport, and release — by reason of his disability, including by:

a) Failing to provide, arrange for, or make available the continuous supplemental oxygen Plaintiff required as a reasonable accommodation necessary for him to safely participate in custody;

b) Instructing Plaintiff to "ration" or "conserve" his oxygen, and physically reducing the flow of oxygen below the medically prescribed level, thereby affirmatively denying him the accommodation he needed;

c) Transporting Plaintiff between facilities without ensuring he had sufficient oxygen to complete the transport, on multiple occasions;

d) Failing to monitor Plaintiff's oxygen supply or blood oxygen levels while he was in Defendant's custody, despite actual knowledge of his need for continuous oxygen;

e) Operating a custodial system that had no policies, procedures, or resources in place to accommodate detainees requiring supplemental oxygen and making no individualized assessment of how to provide Plaintiff with the accommodation he required.

f) Directly reducing the flow of Plaintiff's oxygen to "conserve" it.

178) Providing continuous supplemental oxygen to a detainee with a known need would not have imposed an undue burden or required a fundamental alteration of Defendant's programs. Medical oxygen is widely available, commonly provided in correctional settings, and could have been obtained through the same medical providers who cleared Plaintiff for custody.

179) Defendant acted with deliberate indifference to Plaintiff's federally protected rights. Defendant had actual knowledge that Plaintiff required continuous oxygen to avoid serious medical harm, was informed by medical providers that oxygen was a condition of his medical clearance, observed Plaintiff collapse and suffer medical emergencies on multiple occasions from lack of oxygen, and nevertheless continued to deny Plaintiff the accommodation he required. Defendant's failure to act in the face of this knowledge reflects a deliberate choice to disregard the strong likelihood that Plaintiff's federally protected rights would be violated.

180) As a direct and proximate result of Defendant's violations of Title II of the ADA, Plaintiff suffered and continues to suffer damages, including physical injuries, pain and suffering, emotional distress, loss of dignity, and other damages to be proven at trial.

181) Plaintiff is entitled to compensatory damages, attorney's fees and costs pursuant to 42 U.S.C. § 12205, and injunctive and declaratory relief.

## ELEVENTH CLAIM FOR RELIEF – 29 U.S.C. § 794 – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973[11]
## (against Defendants Board of County Commissioners and Smith)

182) Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

183) Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

184) Upon information and belief, the Costilla County Sheriff's Office and Costilla County receive federal financial assistance, including but not limited to federal grants administered through the Department of Justice, the Department of Homeland Security, and other federal agencies.

185) At all relevant times, Plaintiff was an "individual with a disability" within the meaning of 29 U.S.C. § 705(20)(B) and was otherwise qualified to receive the services, programs, and benefits provided by Defendant.

186) For the reasons set forth in the preceding claim, Defendant denied Plaintiff the benefits of, and subjected him to discrimination under, its programs and activities by reason of his

[11] Plaintiff brings this claim for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation, and for the express purpose of establishing and extending the connotational rights of Coloradoans.

disability, including by failing to provide the reasonable accommodation of continuous supplemental oxygen that Plaintiff required while in Defendant's custody.

187) Defendant acted with deliberate indifference to Plaintiff's federally protected rights under Section 504.

188) As a direct and proximate result of Defendant's violations of Section 504, Plaintiff suffered and continues to suffer damages, including physical injuries, pain and suffering, emotional distress, loss of dignity, and other damages to be proven at trial.

189) Plaintiff is entitled to compensatory damages, attorney's fees and costs pursuant to 29 U.S.C. § 794a, and injunctive and declaratory relief.

## Conclusion and Prayer for Relief

190) Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award him all relief allowed by law and equity, including but not limited to:

a) Compensatory damages according to proof at trial, including but not limited to damages for past and future pecuniary and non-pecuniary losses, physical and mental pain, emotional distress, humiliation, fear, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and all other non-pecuniary losses.

b) Punitive damages to the greatest extent allowable.

c) Attorney’s fees and costs.

d) Pre-judgment and post-judgment interest at the highest possible rate.

e) Declaratory judgment that the actions of Defendants violated the United States and Colorado Constitution and federal disability rights statutes including the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

f) Injunctive relief to meaningfully modify the Costilla County Sheriff’s Office policies, procedures, and operations.

g) Such further relief as the Court may deem just, proper, and appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Dated April 18, 2026.

KOSLOSKI LAW, PLLC

By: /s/ Jason Kosloski
Jason Kosloski, #50214
Attorney for Plaintiff