IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-4019

AUGUSTINE ESQUIBEL,

Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COSTILLA, COLORADO,
JOE SMITH, in his official capacity as Sheriff of Costilla County,
DANNY SANCHEZ, in his individual capacity,
CRUZ SOTO, in his individual capacity,
MONIQUE TRUJILLO, in her individual capacity,
DYLAN MEJIA, in his individual capacity,
JAUREGUI ASTORGA, in their individual capacity, and
JOHN/JANE DOES #1-#4, in their individual capacity,

Defendants.

---

**COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

Defendants BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COSTILLA, COLORADO ("BOCC"); JOE SMITH ("Smith"), in his official capacity as Sheriff of Costilla County; CRUZ SOTO ("Soto"), in his individual capacity; and DYLAN MEJIA ("Mejia"), in his individual capacity (collectively, "County Defendants"), hereby submit this Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I. CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel has conferred with counsel for Plaintiff regarding the relief requested in this motion and is authorized to state that Plaintiff is opposed.

## II. NATURE OF THE CASE

This matter involves Plaintiff Augustine Esquibel's detention and transportation in the custody of the Costilla County Sheriff's Office ("Sheriff's Office") on April 17 and 18, 2024. Plaintiff alleges that he required continuous supplemental oxygen, that Sheriff's Office personnel knew of that need, and that he repeatedly ran out of oxygen while detained and transported between facilities. (Doc. 5 at ¶¶ 27–57.) He further alleges that, after posting bond on April 18, 2024, his release was delayed and an unidentified deputy manually reduced his oxygen flow during the ride home. (*Id.* at ¶¶ 58–66.)

Plaintiff filed his Complaint in the Costilla County District Court on April 18, 2026, against the BOCC; Smith, the current interim Sheriff; former Sheriff Danny Sanchez; former Undersheriff Soto; Jail Administrator Monique Trujillo; Deputies Mejia and Jauregui Astorga; and four unidentified deputies.[1] (*Id.* at ¶¶ 6–13.) County Defendants removed the case to federal court on August 28, 2026. (Doc. 1.)

Plaintiff's Complaint asserts eleven claims for relief. The First through Fourth Claims arise under C.R.S. § 13-21-131 against Defendants Sanchez, Soto, Mejia, Astorga, and Does #1–#4 and allege deliberate indifference and substantive due process violations under article II, §§ 3 and 25 of the Colorado Constitution, and unreasonable search and seizure under article II, § 7. The Fifth through Eighth Claims assert parallel claims under 42 U.S.C. § 1983 against those Defendants and Trujillo under the Fourteenth and Fourth Amendments. The Ninth Claim alleges *Monell* liability under §

---

[1] Defendants Sanchez, Trujillo, and Astorga have not yet been served.

1983 against the BOCC and Smith. The Tenth and Eleventh Claims allege violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794, against the BOCC and Smith.

Plaintiff additionally seeks declaratory and injunctive relief and punitive damages.[2] (Doc. 5 at ¶ 190(b), (e)–(f).)

## III. LEGAL STANDARDS

### A. RULE 12(b)(6) STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted[.]" To survive dismissal, a complaint must contain well pled facts that "raise a right to relief above the speculative level" and state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 557, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere conclusions and formulaic recitation of the elements are not sufficient. *Twombly*, 550 U.S. at 555. Courts disregard conclusory assertions and formulaic recitations of elements, accept well-pleaded facts as true, and determine whether those facts support a claim that is "plausible" or whether the

[2] Plaintiff's requests for declaratory and injunctive relief and punitive damages should be dismissed. Plaintiff asserts that his detention ended on April 18, 2024, and he fails to allege a real and immediate threat of reoccurrence sufficient to support declaratory or injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105–06 (1983). Punitive damages are not available against the BOCC or Smith, who is sued only in his official capacity, under § 1983, Title II, or § 504. *City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). To the extent Plaintiff seeks exemplary damages against Soto or Mejia under Colorado law, the demand is premature because it was included in the initial Complaint and may be added only by amendment after initial disclosures and prima facie proof of a triable issue. C.R.S. § 13-21-102(1.5)(a); *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007).

claim being asserted is merely “conceivable” or “possible” under the facts alleged. *Iqbal*, 556 U.S. at 678–79. Where a complaint pleads facts that are merely consistent with a defendant’s liability, or that are more likely explained by a defendant’s lawful conduct, it “stops short of the line between possibility and plausibility” and fails to suggest a plausible claim for relief. *Id.*; *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B. QUALIFIED IMMUNITY**

Qualified immunity shields officials from civil liability so long as their conduct does not violate a plaintiff’s “clearly established statutory or constitutional rights[.]” *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). This affirmative defense “creates a presumption” that the defendant “is immune from suit.” *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016). To overcome this presumption, “the plaintiff bears a heavy two-part burden to show, first, the defendant’s actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue.” *Thomas v. Kaven,* 765 F.3d 1183, 1194 (10th Cir. 2014) (citation modified). A reviewing court has discretion to address either prong first. *Id.*

“Constitutional rights are clearly established when Tenth Circuit or Supreme Court precedent *particularized to the case at issue* exists.” *Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022) (emphasis added). “Thus, a right is clearly established when our precedent encompasses materially similar conduct or applies with *obvious clarity* to the conduct at issue.” *Id.* (citation modified). As the Supreme Court has frequently stated, “‘clearly established law’ should not be defined at ‘a high level of generality.’” *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

Rather, "existing precedent must have placed the statutory or constitutional question beyond debate" so that "every reasonable official would have understood that what [they are] doing violates that right." *Al-Kidd*, 563 U.S. at 741 (citation modified).

## IV. ARGUMENT AND AUTHORITY

### A. CLAIMS BASED ON ALLEGED CONDUCT OCCURING ON APRIL 17, 2024, ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiff filed his Complaint on April 18, 2026. Claims brought under C.R.S. § 13-21-131 and § 1983 must be commenced within two years after the cause of action accrues. C.R.S. § 13-21-131(5); *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993). A claim accruing on April 17, 2024, therefore had to be filed no later than April 17, 2026. *See* C.R.C.P. 6(a); *Williams v. Crop Prod. Servs., Inc.*, 361 P.3d 1075, 1077 (Colo. App. 2015); *Cade v. Regensberger*, 804 P.2d 238, 239 (Colo. App. 1990).

According to the Complaint, on April 17, 2024, Plaintiff was arrested, evaluated at the San Louis Health-RMC hospital, and cleared for incarceration on the condition that he receive continuous oxygen. (Doc. 5 at ¶¶ 24–30.) Plaintiff alleges that at the Sheriff's Office, he was handcuffed to a chair in a holding area; that no one monitored his blood oxygen level or the oxygen in his tank; and that he ran out of oxygen, collapsed, and was transported by ambulance to Conejos County Hospital. (*Id.* at ¶¶ 36–45.) That same day, after the hospital again cleared him for incarceration on the condition that oxygen was provided, he was transported to the Archuleta County Sheriff's Office in a Costilla County

Sheriff's Office vehicle because Costilla County did not operate a jail. (*Id.* at ¶¶ 45–51.) Plaintiff allegedly ran out of oxygen twice during that transport, required another hospital stop, arrived at the Archuleta County Sheriff's Office with blue lips and difficulty standing, collapsed again, and was taken to a hospital in Pagosa Springs. (*Id.* at ¶¶ 52–57.) Plaintiff's claims arising from each of those events accrued on April 17, 2024.

Plaintiff alleges the deprivation "continued continuously from the time that [he] entered the custody of the Costilla County Sheriff's Office on April 17, 2024, to his eventual release on April 18, 2024." (*Id.* at ¶ 68.) The continuing violation doctrine "applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act[.]" *Hamer v. City of Trinidad*, 924 F.3d 1093, 1099 (10th Cir. 2019) (citation modified); *see also Herrera v. City of Espanola*, 32 F.4th 980, 993 (10th Cir. 2022). By contrast, acts that are "easily identifiable and individually actionable . . . that occurred outside of the limitations period, even though related to those occurring within the period, are not actionable." *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1202 (10th Cir. 2003); *Howell v. Cox*, 758 F. App'x 480, 485 (6th Cir. 2018) ("[I]f the defendant's separate acts of wrongdoing are individually actionable, the continuing-violation doctrine does not apply."). Colorado case law draws the same distinction. *Cf. Hoery v. United States*, 64 P.3d 214, 220–22 (Colo. 2003) (finding the continuing migration and presence of toxic contamination constituted continuing trespass because the defendant could stop the migration and remove the contamination).

The continuing violation doctrine is inapplicable to Plaintiff's April 17, 2024, claims, because those "claims are not premised on a series of actions amounting to a single violation of [his] rights." *Herrera*, 32 F.4th at 997. Instead, and as Plaintiff's allegations demonstrate, each discrete action constituted a separate alleged violation. *See id.* Specifically, he claims that on April 17, 2024, Defendants violated his rights by depriving him of medically necessary oxygen and failing to monitor his oxygen levels, and, as a result, by April 17, 2024, he had already run out of oxygen multiple times, collapsed, and required repeated emergency treatment. (Doc. 5 at ¶¶ 31–57, 67, 79, 94, 126, 133.) Plaintiff had "a complete and present cause of action" when he became aware of those alleged violations. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citation modified). His alleged subsequent decline in health represents additional damages from those completed events, not additional conduct by Defendants. *See Hamer*, 924 F.3d at 1099 (the continuing violation doctrine "is triggered by continual unlawful acts, not by continual ill effects from the original violation") (citation modified).

The Complaint alleges only two categories of new conduct on April 18, 2024: (1) delaying Plaintiff's release after he posted bond; and (2) reducing his oxygen flow during the ride home by an unidentified deputy. (Doc. 5 at ¶¶ 58–66, 100–09, 141–51, 158–62.) Those allegations do not revive claims arising from the discrete events of April 17, 2024. *See Herrera*, 32 F.4th at 994–95; *Hamer*, 924 F.3d at 1105–07. Accordingly, Plaintiff's claims are time-barred to the extent they arise from conduct occurring on April 17, 2024.

## B. PLAINTIFF FAILS TO ALLEGE PERSONAL PARTICIPATION

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). "E]specially in lawsuits involving multiple defendants, . . . it is particularly important that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom*[.]" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (citation modified). Collective allegations that "defendants" infringed a right are insufficient. *Id.*; *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). "Rather, it is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls*, 718 F.3d at 1226 (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)). With respect to § 1983 liability against a supervisor, supervisory title alone is not enough; a plaintiff must show that the supervisor is affirmatively linked to the violation through personal involvement, causation, and the required state of mind. *Dodds v. Richardson*, 614 F.3d 1185, 1195–1199 (10th Cir. 2010). *Brooks v. City & Cnty. of Denver*, 593 P.3d 937, 951–53 (Colo. App. 2026), applies the same principles to supervisory liability claims under C.R.S. § 13-21-131.

Here, the Complaint does not identify any specific actions taken by Soto or Mejia. Soto is alleged to have been the Undersheriff and to have attended a meeting after Plaintiff arrived at the Sheriff's Office. (Doc. 5 at ¶¶ 9, 37.) The remaining allegations state that Soto may have transported Plaintiff or directed someone else to do so; may have directed that Plaintiff not be released from custody after posting bond or merely known about it; and may have directed a deputy to reduce Plaintiff's oxygen flow or merely failed to intervene. (*Id.* at ¶¶ 51, 59, 65, 75(a).) The Complaint does not allege what Soto did at

the meeting, whether he transported Plaintiff, when he learned bond had been posted, or whether he was present during the ride home.

Plaintiff alleges that Mejia was one of four possible people who transported him to Archuleta County, while admitting he "is unaware of precisely who transported him." (*Id.* at ¶¶ 50–51.) Plaintiff further alleges collectively that Mejia, Astorga, and Does #1–4 participated in, knew of, or failed to intervene in the deprivation of Plaintiff's oxygen and continued detention after he posted bond, while expressly acknowledging that he does not know each defendant's role and expects discovery to supply it. (*Id.* at ¶ 75(c).)

Nor do the allegations support a failure to intervene or supervisory liability claim. The Complaint does not allege that Soto or Mejia observed a particular violation, had a realistic opportunity to prevent it, controlled the oxygen supply, or caused the unidentified deputy's actions. *See Estate of Booker v. Gomez*, 745 F.3d 405, 422–23 (10th Cir. 2014) (failure to intervene requires a realistic opportunity to prevent the violation); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767–69 (10th Cir. 2013). Because the Complaint fails to adequately plead personal participation by Soto or Mejia, the claims against them should be dismissed.

## C. SOTO AND MEJIA ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS (FIFTH THROUGH EIGHTH)

### 1. Fourteenth Amendment Deliberate Indifference to Medical Needs

The Fifth Claim for relief alleges that Defendants were deliberately indifferent to Plaintiff's medical needs by depriving him of medical oxygen. (Doc. 5 at ¶¶ 124–27.) A pretrial detainee's deliberate indifference claim has both an objective and subjective

component. *Estate of Burnett v. City of Colorado Springs*, 616 F. Supp. 3d 1111, 1126 (D. Colo. 2022); *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020). To satisfy the objective component, a plaintiff must show "that the deprivation at issue was in fact 'sufficiently serious.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component is satisfied if an officer "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and *she must also draw the inference*." *Strain*, 977 F.3d at 990 (citation modified). "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not a constitutional violation." *Estate of Burgaz v. Bd. of Cnty. Comm'rs*, 30 F.4th 1181, 1186 (10th Cir. 2022).

Even assuming, for purposes of this motion, that an objectively serious medical condition existed, Plaintiff fails to allege that either Soto or Mejia knew of and disregarded a substantial risk of serious harm to Plaintiff. The Complaint does not allege that Soto or Mejia personally withheld oxygen, much less while knowing that doing so posed a substantial risk. The Complaint's general allegations that all Defendants knew Plaintiff was medically fragile or required oxygen, attended a meeting, or later discovered Plaintiff after he collapsed (Doc. 5 at ¶¶ 30, 35, 37, 43, 46, 49) do not establish what Soto or Mejia are alleged to have done or failed to do, what they actually knew, or how either consciously disregarded a particular risk. *See Walker v. Mohiuddin*, 947 F.3d 1244, 1249–50 (10th Cir. 2020) (ruling collective allegations were insufficient where the complaint

failed to identify the defendant's role or what he knew about the inmate's condition "at relevant points in time"); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").

Even if there was a question as to whether the limited conduct attributed to Soto or Mejia was constitutionally permissible, the Complaint identifies no existing precedent—and County Defendants have found none—that would have made it sufficiently clear to every reasonable officer that holding a supervisory title, attending an unspecified meeting, or belonging to a group that transported an unidentified transporting deputy constituted deliberate indifference. Accordingly, Soto and Mejia are entitled to qualified immunity.

**2. Fourteenth Amendment Substantive Due Process**

Plaintiff's Sixth Claim asserts that Defendants violated his substantive due process rights under the Fourteenth Amendment by "depriving [him] of" and "requiring [him] to 'ration' or 'conserve' his medically necessary oxygen[.]" (Doc. 5 at ¶¶ 129–35.) This claim does not identify a separate constitutional deprivation. Instead, it repeats the alleged denial of medical oxygen and asserts such conduct "shocks the conscience[.]" (*Id.* at ¶ 133.) However, the Supreme Court and Tenth Circuit have repeatedly held that where a constitutional amendment "provides an explicit textual source of constitutional protection," courts must analyze the claim under that amendment, not under substantive due process. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Albright v. Oliver*, 510 U.S. 266, 273

(1994); *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007). The Fourteenth Amendment's deliberate indifference framework already governs the allegations regarding medical care asserted in the Fifth Claim.

**3. Fourth Amendment Unreasonable Search & Seizure**

Plaintiff's Seventh and Eighth Claims allege that Defendants violated the Fourth Amendment by continuing to detain him after he posted bond and by manipulating the regulator on his oxygen bottle to reduce its flow, which he characterizes as both a seizure and a search. (Doc. 5 at ¶¶ 136–64.) As discussed above, Plaintiff does not identify the deputy who transported him or adjusted the regulator and instead pleads only alternative and collective allegations concerning Soto and Mejia. (*See id.* at ¶¶ 51, 59–65.)

In any event, the alleged oxygen manipulation does not constitute a search because Plaintiff does not allege that Defendants invaded his privacy or attempted to obtain information. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012); *cf. Arizona v. Hicks*, 480 U.S. 321, 324–25 (1987) (ruling an officer's actions in moving equipment constituted a search because it exposed concealed information). Nor does the Complaint plausibly allege a seizure. A seizure requires "meaningful interference with an individual's possessory interest[]" in the property. *Jacobsen*, 466 U.S. at 113. Plaintiff does not allege that Soto, Mejia, or the unidentified deputy took or detained the bottle or deprived Plaintiff of its possession.

As to the post-bond allegations, even if Plaintiff could identify Soto as the Defendant that "directed that he not be released from custody," such allegations likewise fail to state a clearly established unreasonable seizure claim. Plaintiff alleges that he

posted bond at the hospital, was informed the Sheriff's Office lacked a deputy to return him home, and was released on April 18, 2024. (Doc. 5 at ¶¶ 57–60.) He does not allege when bond was posted or how long the delay lasted. His original arrest was supported by an outstanding bench warrant. (*Id.* at ¶¶ 22, 24.) The Tenth Circuit has rejected a substantive due process challenge to a three-day post-bond delay caused by release procedures related to administration coordination. *See Dawson v. Bd. of Cnty. Commr's of Jefferson Cnty.*, 732 F. App'x 624, 632–36 (10th Cir. 2018).

At minimum, no precedent clearly establishes that adjusting a medical device while its owner retains possession or a brief delay of release caused by lack of a transport deputy constitutes a search or seizure. Soto and Mejia are therefore entitled to qualified immunity on the Seventh and Eighth Claims for relief.

**D. PLAINTIFF'S CLAIMS FOR RELIEF UNDER THE COLORADO CONSTITUTION SHOULD BE DISMISSED (FIRST THROUGH FOURTH)**

Plaintiff's state constitutional claims fail for the same reasons as his federal claims because Colorado courts analyze deliberate indifference to medical needs, unconstitutional search and seizure, and due process claims under Article II, §§ 3, 7, and 25 of the Colorado Constitution using the same framework as the Fourth and Fourteenth Amendments. *See Woodall v. Godfrey*, 23CA0420, 2024 WL 1779953, at *3 (Colo. App. Apr. 25, 2024); *People v. Rister*, 803 P.2d 483, 489–90 (Colo. 1990); *Scholz v. Metro. Pathologists, P.C.*, 851 P.2d 901, 906 n.7 (Colo. 1993).

Plaintiff fails to allege any factual support for these alleged state constitutional violations that are different from the facts alleged in support of their federal claims for

relief. (*See* Doc. 5 at ¶¶ 76–121.) Because Plaintiff alleges no separate conduct or injury uniquely supporting his state constitutional claims, those claims should be dismissed.

**E. PLAINTIFF FAILS TO ALLEGE A MUNICIPAL LIABILITY CLAIM (NINTH)**

Plaintiff's official capacity claim against Smith should be construed as though it was brought against Costilla County. *See Johnson v. Bd. of Cnty. Commr's for Cnty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996).

A municipal liability claim fails where there is no underlying constitutional violation by an official. *See Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009). As set forth in this motion, Plaintiff has failed to establish any underlying constitutional violation by Soto or Mejia. As such, there can be no municipal liability.

Even if Plaintiff could establish a constitutional violation, he nonetheless fails to satisfy the rigorous standards of culpability and causation necessary to impose municipal liability. For Plaintiff to state a cognizable *Monell*[3] claim, he must show the existence of a municipal custom or policy and a direct causal link between the custom or policy and the alleged constitutional injury. *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). Liability based on failure to train ordinarily requires a pattern of similar violations. *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

The Complaint merely listed alleged customs and training or supervision deficiencies without identifying any policy, practice, prior similar incident, or specific

---

[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

training deficiency. (*See* Doc. 5 at ¶¶ 167–69.) Such assertions are insufficient to establish a well-settled custom or practice. *See, e.g., Waller v. City & Cnty. of Denver*, 1:14–cv–02109–WYD–NYW, 2015 WL 1816371, at *7 (D. Colo. Apr. 20, 2015) ("Bare allegations standing alone cannot support a plausible inference for either prong of the standard for municipal liability[.]"); *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1277–78 (10th Cir. 2008) (explaining that isolated incidents do not establish a custom). The Ninth Claim should therefore be dismissed.

### F. PLAINTIFF'S CLAIMS UNDER THE ADA AND REHABILITATION ACT SHOULD BE DISMISSED (TENTH AND ELEVENTH)

Title II of the ADA and § 504 of the Rehabilitation Act prohibit disability-based exclusion from, or denial of meaningful access to, a public entity's services. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). They do not provide remedies for alleged deficient treatment of the medical condition that constitutes the disability. *See Fitzgerald v. Corr. Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) (finding prisoner would not have been "otherwise qualified" for treatment in the absence of his alleged disability because his alleged disability was the reason why he was seeking medical treatment); *cf. Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1195–98 (10th Cir. 2007) (recognizing an ADA claim where a deaf detainee was denied auxiliary aids necessary to access to telephone services and a probable cause hearing).

Although Plaintiff identifies custody, transport, and release as the relevant "services," every alleged denial concerns the failure to supply, monitor, or administer oxygen as treatment for his COPD. (*See* Doc. 5 at ¶¶ 175–80, 185–89.) The Complaint

also alleges that oxygen was unavailable because the Sheriff's Office lacked a supply and that release was delayed because transportation staff were not available, not that Plaintiff was excluded from a service by reason of his disability, much less solely by reason of his disability. (*Id.* at ¶¶ 31, 34, 58.) The Tenth and Eleventh Claims should therefore be dismissed. Additionally, Plaintiff's demand for compensatory damages fails because Plaintiff alleges knowledge of a medical risk, not deliberate indifference to the likely violation of a federally protected disability right. *See Barber ex rel. Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1228–29 (10th Cir. 2009).

WHEREFORE, for the reasons set forth above, County Defendants respectfully request that this Court enter an order dismissing Plaintiff's Complaint, with prejudice, and award them attorney fees and costs as allowed by law.

Respectfully submitted,

Date: September 14, 2026

s/ Michaela S. Morrissey

Michaela S. Morrissey
VAUGHAN & DeMURO
6760 Corporate Drive, Suite 220
Colorado Springs, CO 80919
(719) 578-5500 (phone)
(719) 578-5504 (fax)
Mmorrissey@vaughandemuro.com
ATTORNEY FOR COUNTY DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses. I have also provided the foregoing to the following directly via electronic mail:

**Jason Kosloski, Esq.**
jkosloski@kosloskilaw.com

s/ Michaela S. Morrissey
Michaela S. Morrissey