**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-04019-MDB

**AUGUSTINE ESQUIBEL,**

Plaintiff,

v.

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COSTILLA, COLORADO**;
**JOE SMITH**, in his official capacity as Sheriff of Costilla County;
**DANNY SANCHEZ**, in his individual capacity;
**CRUZ SOTO**, in his individual capcity;
**MONIQUE TRUJILLO**, in her individual capacity;
**DYLAN MEJIA**, in his individual capacity;
**JAUREGUI ASTORGA**, in their individual capacity; and
**JOHN/JANE DOES 1-4**, in their individual capacities,

Defendants.

---

**PLAINTIFF'S RESPONSE TO IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF 15]**

---

Plaintiff Augustine Esquibel responds in opposition to the Motion to Dismiss (ECF No. 15, "Motion") filed by the Board of County Commissioners of Costilla County ("BOCC"), Sheriff Joe Smith in his official capacity, Cruz Soto, and Dylan Mejia ("County Defendants").

## INTRODUCTION

A hospital told the Costilla County Sheriff's Office that Mr. Esquibel could be jailed only if he received continuous oxygen. The Sheriff's Office had none, and the Sheriff told him to "ration" what was in his tank. Over the next day, Sheriff's Office personnel left him

handcuffed and unmonitored until his oxygen ran out and he collapsed. They drove him toward Archuleta County knowing he lacked enough oxygen for the trip. They held him after he posted bond because no deputy was free to drive him home. On that drive, a deputy turned down his oxygen flow to "conserve it." (ECF No. 5 ¶¶ 27–66.)

The Motion does not contend that this conduct was lawful. It argues that the April 17 conduct is a day too old, that Plaintiff cannot yet say which deputy did what, and that no prior case involved oxygen. The limitations argument ignores *Vasquez-Garcia v. Centurion, LLC*, 172 F.4th 1150 (10th Cir. 2026), which holds that a deliberate-indifference claim does not accrue with the medical injury alone and that a persistent failure to treat a chronic condition can be a continuing violation. The participation argument ignores the paragraphs that name Soto and Mejia. The qualified-immunity argument frames the right at the wrong level, and qualified immunity is no defense to the state claims at all. C.R.S. § 13-21-131(2)(b). The Motion should be denied.

## STATEMENT OF FACTS

Mr. Esquibel has COPD and chronic respiratory failure and is prescribed supplemental oxygen. (ECF No. 5 ¶¶ 16–18.) He was arrested at 10:37 a.m. on April 17, 2024, on a civil failure-to-appear warrant and taken to a hospital, which cleared him for jail only on the condition that he receive "continuous oxygen between 4 to 6 L/min" because he "is not medically cleared to stay at a facility that is unable to provide continuous oxygen." (*Id.* ¶¶ 20–28.) Then-Sheriff Danny Sanchez was told of that condition, and he told Mr. Esquibel to "ration" his oxygen because the Sheriff's Office had

none. (*Id.* ¶¶ 27, 31.) Every individual defendant knew the Sheriff's Office had no oxygen. It had no procedure for oxygen-dependent detainees. (*Id.* ¶¶ 34–35, 40.)

Mr. Esquibel was handcuffed to a chair and left alone, unmonitored, while Sanchez, Soto, Trujillo, Mejia, Astorga, and Does #1–#4 "met and discussed a plan" for him. His oxygen ran out and he collapsed, and those defendants, Soto and Mejia among them, found him in medical distress. (*Id.* ¶¶ 37–43.) A second hospital again cleared him only on condition that he receive oxygen, which Soto and Mejia knew. (*Id.* ¶¶ 44–46.) Sheriff's Office personnel then drove him toward Archuleta County with too little oxygen for the trip, which each named defendant knew. The driver was Soto, Mejia, Astorga, or Doe #1, acting at the direction of Sanchez or Soto. (*Id.* ¶¶ 47–51.) He ran out of oxygen twice en route, arrived with blue lips, collapsed again, and was hospitalized in Pagosa Springs. (*Id.* ¶¶ 52–57.)

Mr. Esquibel posted bond from the hospital, but the Sheriff's Office kept him in custody because it had no deputy to drive him home. Sanchez or Soto directed that, or knew of it and did nothing. (*Id.* ¶¶ 57–59.) He was released on April 18 after a deputy, one of the individual defendants, drove him home. Knowing he again lacked enough oxygen, the deputy manually reduced the flow from his bottle to "conserve it," at the direction or with the knowledge of Sanchez or Soto. (*Id.* ¶¶ 60–65.) In about 24 hours, Mr. Esquibel ran out of oxygen at least four times and was hospitalized at least three times. The deprivation "continued continuously" until his release. (*Id.* ¶¶ 67–68.)

Defendants Sanchez, Trujillo, and Astorga have not been served and have not joined the Motion. (Mot. 2 n.1.)

## Legal Standard

A complaint survives if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Limitations is an affirmative defense, and dismissal is proper "only when the complaint itself admits all the elements of the affirmative defense." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). Asserting qualified immunity on a Rule 12(b)(6) motion "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).

## Argument

### I. The Limitations Defense Fails on the Face of the Complaint.

*A. The claims did not accrue on April 17.*

The Motion treats the claims as accruing once Plaintiff ran out of oxygen on April 17. (Mot. 5–7.) *Vasquez-Garcia*, which the Motion does not cite, rejects that approach. There, the Tenth Circuit reversed a Rule 12(b)(6) limitations dismissal of a deliberate-indifference claim, holding that "the term injury for accrual purposes does not just mean a medical injury." 172 F.4th at 1160. The plaintiff's claims "did not accrue whenever she incurred an injury. Nor did her claims accrue whenever she became aware of her injuries." *Id.* They accrued only when she "knew or reasonably could have known that a) her injuries

were objectively and sufficiently serious and b) the defendants acted with the requisite subjective state of mind." *Id.* That inquiry "often raises factual questions." *Id.* (quoting *Mallet v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 132 (2d Cir. 2025)). On the complaint before it, the court held that the plaintiff "could not have had knowledge of defendants' state of mind until after she was released from prison and learned that her health had rapidly deteriorated," because "it was only then that she could have drawn the inference that something went seriously awry with the medical care she was denied or improperly received while she was incarcerated." *Id.* at 1161. The defendants bear the burden of showing untimeliness "based solely on the complaint," and "when there are gaps in the plaintiff's complaint, we fill those gaps with reasonable inferences drawn in favor of the plaintiff, not against her." *Id.* at 1159, 1161.

The same is true here, on both components. *The injury.* Mr. Esquibel left custody on April 18 having survived the episodes in the jail and on the road. His health then "continued to decline." (ECF No. 5 ¶ 69.) He later discussed those 24 hours with his doctors, who told him that "this period of oxygen deprivation likely significantly contributed to the decline" in his health. (*Id.* ¶ 70.) A deliberate-indifference claim accrues when the plaintiff knows that the defendants' indifference "caused him substantial harm." *Vasquez v. Davis*, 882 F.3d 1270, 1276 (10th Cir. 2018). Nothing in the Complaint shows that Mr. Esquibel knew, or had reason to know, on April 17 that the deprivation had done him harm. Nor does the Complaint say when his doctors told him, and that gap is filled in his favor. *Vasquez-Garcia*, 172 F.4th at 1161. This is not a case of a known injury whose "full extent" was not yet known. *Vasquez*, 882 F.3d at 1276 (quoting *Wallace v. Kato*, 549 U.S.

384, 391 (2007)). The decline in his health is a different and later harm than the episodes of April 17, and he could not connect it to Defendants' conduct without medical advice. *Cf. Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo. 1991) (discovery of benign pleural disease did not start the limitations period for asbestosis, assumed to be a separate and distinct disease caused by the same exposure). *The state of mind.* Nothing in the Complaint shows that on April 17 Mr. Esquibel knew what Soto and Mejia knew or who was making the decisions about his custody. He still does not know who drove him. (ECF No. 5 ¶ 51.)

*B. The deprivation was a continuing violation that ended April 18.*

The continuing-violation doctrine "is available within the § 1983 context." *Herrera v. City of Espanola*, 32 F.4th 980, 986 (10th Cir. 2022). *Vasquez-Garcia* applied it to a prisoner with "a chronic condition that needed continuous monitoring and treatment," reasoning that "the failure to provide regular monitoring, and proper treatment is itself a continuous violation." Because she alleged that the failure continued until "the day she was released," she could rely on the doctrine to survive the limitations defense. 172 F.4th at 1162–63. That describes this case. A physician prescribed continuous oxygen as a condition of custody. The Sheriff's Office never supplied it, and the failure "continued continuously" until his release on April 18. It ended with an affirmative act that day, when a deputy turned down his flow. (ECF No. 5 ¶¶ 28, 64, 68.) This is continuing unlawful conduct, not "continual ill effects" of a single act. The Motion's authorities do not hold otherwise. *Herrera* held the doctrine available. 32 F.4th at 993–95. *Hamer v. City of Trinidad* did not decide the doctrine; the plaintiff abandoned it. 924 F.3d 1093, 1101 n.5

(10th Cir. 2019). *Hamer* instead reversed a summary judgment under the repeated-violations doctrine, holding that where a duty-bound actor "keeps failing to act while the underlying problem remains unremedied, . . . every day's inaction amounts to a new violation." *Id.* at 1105. The doctrine reaches Soto and Mejia, who are alleged to have acted on April 18. (ECF No. 5 ¶¶ 59, 65, 75(a), 75(c).) *See Vasquez*, 882 F.3d at 1277.

*C. The state claims are timely for the same reasons.*

A § 13-21-131 claim must be brought within two years after it accrues, C.R.S. § 13-21-131(5), and it accrues when "both the injury and its cause are known or should have been known by the exercise of reasonable diligence," C.R.S. § 13-80-108(1). A claim "does not accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action." *Miller*, 817 P.2d at 113 (quoting *City of Aurora v. Bechtel Corp.*, 599 F.2d 382, 389 (10th Cir. 1979)). Mr. Esquibel's doctors told him the deprivation likely contributed to his decline. (ECF No. 5 ¶ 70.) And a continuing wrong "does not begin to accrue until the tortious conduct has ceased." *Hoery v. United States*, 64 P.3d 214, 218 (Colo. 2003).

At a minimum, every claim based on April 18 conduct proceeds, and the April 17 events may be used as "background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). They show what Defendants knew on April 18.

**II. The Complaint Alleges Soto's and Mejia's Personal Participation.**

The Motion says the Complaint "does not identify any specific actions taken by Soto or Mejia." (Mot. 8.) It does. Soto and Mejia attended the planning meeting while Plaintiff sat unmonitored (ECF No. 5 ¶ 37). They knew he needed continuous oxygen, that the Sheriff's Office had none, and that his clearance depended on it (*id.* ¶¶ 30, 35, 46). They found him collapsed (*id.* ¶ 43). They knew he lacked enough oxygen for the Archuleta transport, and one of them may have driven it (*id.* ¶¶ 49, 51). Soto, as Undersheriff, directed or knowingly allowed the transports, the post-bond detention, and the reduction of oxygen (*id.* ¶¶ 51, 59, 65, 75(a)). Mejia participated in, or knowingly failed to stop, the continued deprivation and detention (*id.* ¶ 75(c); *see id.* ¶¶ 60–63).

That is not group pleading. *Robbins v. Oklahoma* involved defendants whose roles were "entirely different in character." 519 F.3d 1242, 1250 (10th Cir. 2008). *Walker v. Mohiuddin* involved one of sixteen providers who was "barely mentioned." 947 F.3d 1244, 1250 (10th Cir. 2020). This case involves a handful of officers from one small office, acting together for a day toward one detainee. Collective references are read "in tandem with" allegations "which identify specific actions taken by each individual." *Bledsoe v. Carreno*, 53 F.4th 589, 608 (10th Cir. 2022); *see Wilson v. Stoltenberg*, 182 F.4th 903, 917–18 (10th Cir. 2026).

The alternative allegations are proper. Fed. R. Civ. P. 8(d)(2). *Bledsoe* held sufficient an allegation that each defendant either participated or knew of the violation and failed to intervene. 53 F.4th at 616 n.24. Who drove which leg is recorded, if

anywhere, in Sheriff's Office files that it did not adequately produce. (ECF No. 5 ¶ 13.) And the transport allegations do not depend on who drove, because each named defendant knew Plaintiff lacked enough oxygen for the trip. (*Id.* ¶ 49.) Soto is sued for his own conduct, not his title. Even as a supervisor, he is alleged to have been personally involved, to have caused the harm, and to have acted with deliberate indifference. *See Dodds v. Richardson*, 614 F.3d 1185, 1195–99 (10th Cir. 2010).

**III. Soto and Mejia Are Not Entitled to Qualified Immunity.**

*A. Fifth Claim (deliberate indifference).*

A medical need is serious if it "has been diagnosed by a physician as mandating treatment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citation omitted). The Motion does not dispute this element. (Mot. 10.) The subjective element is met by actual knowledge. Soto and Mejia knew of the oxygen order and the lack of oxygen, found Plaintiff collapsed, and knew he lacked enough oxygen for the transport. (ECF No. 5 ¶¶ 30, 35, 43, 46, 49.) Deliberate indifference includes "intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). It also occurs when officials "prevent an inmate from receiving treatment." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). This is not mere departure from a medical instruction. *But cf. Jarvis v. Liggett*, No. 25-8046 (10th Cir. June 10, 2026) [add cite]. The hospital told Defendants the risk, and the first collapse confirmed it.

The right was clearly established. The Motion asks whether "holding a supervisory title, attending an unspecified meeting, or belonging to a group" is unconstitutional. (Mot.

11.) The real question is whether officers who know a physician has conditioned custody on continuous oxygen may withhold it, transport the detainee without it after he collapses, and turn it down. *Martin v. Board of County Commissioners*, 909 F.2d 402 (10th Cir. 1990) (per curiam), answers it. There, Colorado deputies arrested a hospital patient on a failure-to-appear warrant despite warnings, relayed from her attending physician, about her condition. The Tenth Circuit held that a warrant "does not empower them to execute the arrest with . . . a deliberate indifference to an individual's known medical needs," *id.* at 404, and affirmed the denial of qualified immunity, *id.* at 406. Later cases confirm the rule. *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1162 (10th Cir. 2022) ("[f]ailure to act in accordance with or intentional interference with prescribed medical treatment or instructions" is actionable) (quoting *Ajaj v. United States*, 293 F. App'x 575, 579 (10th Cir. 2008)) (emphasis omitted); *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1033 (10th Cir. 2020); *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, [add pin] (10th Cir. 2022) (denial of life-sustaining prescribed medication). No oxygen-specific case is needed. *Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022) (no "scavenger hunt for a prior case with identical facts"); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

*B. Sixth Claim (substantive due process).*

*Graham v. Connor* does not apply because no specific amendment governs the medical claims of a detainee who has not been convicted. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843, 850 (1998). Plaintiff agrees the Fifth and Sixth Claims may be analyzed together under current law. He preserves his argument that *Kingsley v. Hendrickson*, 576 U.S. 389

(2015), supplies an objective standard for officers. *But see Strain v. Regalado*, 977 F.3d 984, 991 (10th Cir. 2020).

*C. Seventh Claim (seizure).*

*Post-bond detention.* After Plaintiff posted bond on a civil warrant, nothing authorized holding him, yet he was held for lack of a driver. (ECF No. 5 ¶¶ 58, 101–03, 142–45.) Since 1997 it has been "clearly established in our circuit" that continued detention after bail is set "must be reasonably related to a legitimate goal." *Dodds*, 614 F.3d at 1206 (due process) (citing *Gaylor v. Does*, 105 F.3d 572 (10th Cir. 1997)); *see Manuel v. City of Joliet*, 580 U.S. 357, 367–69 (2017). Lack of a driver is no detention goal. Colorado excludes "a lack of staffing resources" from the circumstances that can justify holding a bonded defendant past six hours. C.R.S. § 16-4-102(2)(e), (g). *Dawson v. Board of County Commissioners*, 732 F. App'x 624 (10th Cir. 2018), involved no Fourth Amendment claim and a delay caused by an unmet court-ordered GPS condition. If the Court requires it, Plaintiff will plead the duration and the *Gaylor* due-process theory in the alternative. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

*The oxygen.* A seizure occurs on "some meaningful interference with an individual's possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 113, 120–21 (1984) ("assertion of dominion and control" is a seizure); *Soldal v. Cook Cnty.*, 506 U.S. 56, 61–63 (1992). Nothing in that test requires the officer to take the bottle away. (*Contra* Mot. 12.) The deputy took control of Plaintiff's oxygen and decided how much he would breathe. (ECF No. 5 ¶¶ 64, 107–08, 149–50.) The Tenth Circuit has denied qualified

immunity at the pleading stage for an unjustified seizure of personal property. *Mayfield v. Bethards*, 826 F.3d 1252, 1256, 1259 (10th Cir. 2016).

*D. Eighth Claim (search).*

Plaintiff withdraws the Eighth Claim. He proceeds on the regulator conduct under the Seventh Claim and the Third and Fourth Claims.

**IV. The Colorado Constitutional Claims Survive.**

The Motion argues only that the state claims "fail for the same reasons" as the federal claims. (Mot. 13.) They do not. First, "[q]ualified immunity is not a defense" under § 13-21-131. C.R.S. § 13-21-131(2)(b). Every "clearly established" argument is irrelevant to Claims 1–4. Second, the statute imposes liability on an officer who subjects a person to a deprivation, "including failing to intervene." *Id.* § 13-21-131(1). That answers the participation argument. Third, Colorado does not follow federal law in lockstep. The Motion's own authority recognizes that article II, section 7 "provides greater protection than does the fourth amendment." *People v. Rister*, 803 P.2d 483, 489 (Colo. 1990). *Brooks v. City & County of Denver* applied the federal standard only "[b]ecause neither party argue[d]" otherwise. 2026 COA 42M, ¶ 47, 593 P.3d 937. Colorado has departed from federal search-and-seizure law for government intrusions on a person's effects. *People v. Oates*, 698 P.2d 811, 815–18 (Colo. 1985); *see People v. Sporleder*, 666 P.2d 135, 140 (Colo. 1983). Nothing bars pleading § 13-21-131 claims alongside § 1983 claims for the same conduct.

**V. The Complaint States a Monell Claim.**

*A. Final policymaker.*

The Ninth Claim alleges that Sheriff Sanchez had final policymaking authority and acted as the County's alter ego. (ECF No. 5 ¶ 166.) The Motion never addresses that theory. "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). When the policymaker directs the act, fault and causation are "straightforward." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404–05 (1997). A Colorado sheriff is the final policymaker for the care and transport of prisoners. *Whitson v. Bd. of Cnty. Comm'rs*, 106 F.4th 1063, 1067–68, 1072 (10th Cir. 2024) (reversing Rule 12 dismissal; C.R.S. § 30-10-511). Sanchez was told of the oxygen condition and told Plaintiff to "ration." He took part in planning his custody. He or Soto directed the transport, and he directed or allowed the post-bond detention and the oxygen reduction. (ECF No. 5 ¶¶ 27, 31, 37, 51, 59, 65, 75(a).)

*B. No individual-liability prerequisite.*

The Motion argues there is no violation "by Soto or Mejia." (Mot. 14.) Its own authority requires the absence of a violation "by *any* of [the County's] officers." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (emphasis added) (internal quotation marks omitted). Sanchez, Trujillo, and Astorga have not moved, and the Motion does not argue that they committed no violation. A county may also be directly liable "[w]here the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1191 (10th Cir.

2020). The facts fit that theory: no oxygen, no procedure, no monitoring, and no staff to release a bonded detainee. (ECF No. 5 ¶¶ 34, 39–40, 58, 167.) Because that theory must be pleaded expressly, *Thao v. Grady Cnty. Crim. Just. Auth.*, 159 F.4th 1214, 1233 n.13 (10th Cir. 2025), Plaintiff requests leave to add it if the Court reaches the question.

*C. Obvious need.*

No prior pattern is needed where the consequences of a failure to train are "patently obvious." *Connick v. Thompson*, 563 U.S. 51, 63–64 (2011); *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989); *Lance v. Morris*, 985 F.3d 787, 800–02 (10th Cir. 2021). A sheriff's office with no jail knows to a moral certainty that some arrestees will depend on oxygen. It had no oxygen and no protocol. (ECF No. 5 ¶¶ 34, 40, 71–73.)

**VI. The ADA and Rehabilitation Act Claims Are Properly Pleaded.**

Title II reaches prisons and jails, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–10 (1998), and the Tenth Circuit has rejected "a broad rule categorically excluding arrests from the scope of Title II," *Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999). A public entity must reasonably accommodate a disability it knows of, including when someone else has told it of the disability. *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1195–98 (10th Cir. 2007). The hospital told the Sheriff's Office Plaintiff required continuous oxygen, and it provided none. (ECF No. 5 ¶¶ 27–28, 175–77.)

This is not a challenge to a "purely medical decision[]." *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005). The medical judgment was the hospital's. The Sheriff's Office did not disagree with it. It simply did not provide what Plaintiff needed to

be held and moved. Failure to provide prescribed treatment is "an outright denial of medical services," not a medical judgment. *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 287 (1st Cir. 2006).

The denial was "by reason of" disability because "any failure to provide reasonable accommodations for a disability is necessarily 'because of a disability.'" *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017) (Title I) (quoting *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999)). The lack of an oxygen supply is an undue-burden defense that the entity must prove. *Robertson*, 500 F.3d at 1196. Deliberate indifference is pleaded: Defendants knew a federally protected right was substantially likely to be harmed and failed to act. *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009). The Sheriff knew of the need and supplied nothing. His personnel found Plaintiff collapsed, moved him repeatedly without enough oxygen, and reduced his flow. (ECF No. 5 ¶¶ 27–31, 41–57, 64, 179.)

**VII. Leave to Amend and Remand.**

If the Court finds any claim deficient, Plaintiff requests leave to amend. Fed. R. Civ. P. 15(a)(2). If all federal claims are dismissed, the state claims should be remanded. 28 U.S.C. § 1367(c); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350–57 (1988); *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998).

Dated: October 30, 2026.

Respectfully submitted,

/s/ Jason Kosloski
Jason M. Kosloski
Kosloski Law, PLLC
1401 Lawrence Street
Suite 1600
Denver, CO 80202
(720) 605-6487
jkosloski@kosloskilaw.com
*Attorney for Plaintiff Esquibel*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, the foregoing **PLAINTIFF'S RESPONSE TO IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF 15]** was served electronically on the following via email:

Michaela S. Morrissey
VAUGHAN & DEMURO
6760 Corporate Drive, Suite 220
Colorado Springs, CO 80919
(719) 578-5500 (phone)
(7u19( 578-5504 (fax)
mmorrissey@vaughandemuro.com

/s/ Jason Kosloski
Jason Kosloski